IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY,<br><br>                              Plaintiffs,<br><br>     v.<br><br>BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., MI HOLDINGS, INC., MALLINCKRODT, INC., COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, and EXELON CORPORATION,<br><br>                              Defendants. | Case No.  4:17-cv-00024<br><br>**ORAL ARGUMENT REQUESTED** |

**MALLINCKRODT LLC'S MOTION TO DISMISS PLAINTIFFS'
PETITION AND MEMORANDUM IN SUPPORT**

Defendant Mallinckrodt LLC ("Mallinckrodt"), improperly identified as Mallinckrodt, Inc. and MI Holdings, Inc.,[1] hereby moves this Court pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) for an Order dismissing Plaintiffs' Petition for failure to state a claim upon which relief can be granted. Plaintiffs' Petition fails for multiple reasons. First, even though Plaintiffs failed to plead a claim under the Price-Anderson Act, 42 U.S.C. section 2011 *et seq.*, it is the exclusive cause of action for which they can seek recovery and completely preempts their pleaded state law causes of action. Moreover, Plaintiffs' Petition fails to state a plausible case against Mallinckrodt as mandated by Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Specifically, the

---

[1] MI Holdings, Inc., formerly known as Mallinckrodt, Inc. (a Missouri Corporation), is not associated with Mallinckrodt LLC, the successor in interest to Mallinckrodt Chemical Works.

1

Petition fails to plead a breach of the appropriate standard of care, fails to establish a sufficient nexus between Mallinckrodt and the alleged damages to sustain liability, and includes general allegations against the "defendants" that fail to give Mallinckrodt fair notice of the claims against it. In support of this motion, Mallinckrodt states:

## I. INTRODUCTION

This action stems from Plaintiffs' allegation that their residence, which they purchased in 1999, and potentially themselves have been contaminated with radioactive material. (Petition, generally). They trace the origin back six decades, during World War II, when the United States government contracted with Mallinckrodt's corporate predecessors, as part of a top secret military program known as the Manhattan Project, to process Uranium for the war effort. (Petition, ¶¶ 1, 23, 45). They further allege Mallinckrodt processed the Uranium at its downtown St. Louis facility from 1942 to 1957. (Petition, ¶ 44). Starting in the late 1940s, radioactive mill tailings and waste generated during Uranium processing were purportedly transported by an unnamed entity to a government-owned site known as the St. Louis Airport Site or "SLAPS." (Petition, ¶ 48).

According to the Petition, in the 1960s, mill tailings and waste products were transported from SLAPS to a site on Latty Avenue in Hazelwood, Missouri. (Petition, ¶ 51). In the 1960s, defendant Cotter Corporation ("Cotter") allegedly purchased radioactive material stored at SLAPS and Latty Avenue. (Petition, ¶ 52). Plaintiffs further allege, in approximately 1973, Cotter mixed the radioactive material with another material from the Latty Avenue site and "marketed the mixture and contaminated soil as suitable for 'daily cover' for Landfill operations." (Petition, ¶ 53). The radioactive mixture was allegedly used as cover in the West

Lake Landfill.  (Petition, ¶ 54).  Plaintiffs allege radioactive material from the ground cover has migrated onto and contaminated their property.  (Petition, generally).

Based on these allegations, Plaintiffs filed a seven-count Petition in the Circuit Court of St. Louis County, Missouri against numerous, unrelated defendants.  (Petition, generally).  In a transparent attempt to avoid federal jurisdiction and the resulting burden of proof, however, Plaintiffs failed to allege the solitary cause of action for which they can recover:  a claim under the Price-Anderson Act, 42 U.S.C. section 2011 *et seq.*   They even went so far as to claim they are "not alleg[ing] causes of action arising under the laws of the United States." (Petition, ¶ 9).  As explained below, Plaintiffs' claims are exclusively governed by the Price-Anderson Act, and, because they have failed to properly allege the claim, their Petition must be dismissed for failing to state a claim upon which relief can be granted.

## II.      LEGAL STANDARD

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Rather, the pleading must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544 (2007)).  A complaint is sufficiently plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In order to "nudge[] their claims across the line from conceivable to plausible," plaintiffs must provide a complaint with "enough

heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557, 570 (internal quotations and alterations omitted). Claims that are merely conceivable, not plausible, must be dismissed. *Id.*

In evaluating whether a Complaint is sufficiently plausible, courts must engage in a two-pronged approach. *Iqbal*, 556 U.S. at 679. The first prong requires the court to identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. After removing those legal conclusions and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," *id.* at 678, the second prong requires the court to determine whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In performing this exercise, courts also must consider whether there are "more likely explanations" for the incident that detract from the plausibility of the pleaded theory. *Id.* at 680.

### III. ARGUMENT & AUTHORITIES

#### A. Plaintiffs' Petition Should be Dismissed Because State Law Claims are Preempted by Federal Law.

##### 1. The Price-Anderson Act is the Exclusive Remedy for Damages Allegedly Resulting from a Nuclear Incident.

The Price-Anderson Act ("PAA") was enacted in 1957 with the intent of "protect[ing] the public," "encourag[ing] the development of the atomic energy industry," and "limit[ing] the liability of those persons liable" for nuclear incidents. 42 U.S.C. § 2012(i). Congress has amended the PAA on several occasions, including several prominent amendments in 1988 that applied retroactively. *O'Conner v. Commonwealth Edison Co.*. 13 F.3d 1090, 1096 (7th Cir. 1994). Under the PAA, a nuclear incident is defined as:

>any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . .

42 U.S.C. §2014(q). A "public liability action, as used in section 2210 [of the Act], means *any* suit asserting public liability." 42 U.S.C. § 2014(hh) (emphasis added); *Id.* Public liability is a broad term encompassing "*any* liability arising out of or resulting from a *nuclear incident* or precautionary evacuation" other than a few enumerated exceptions not at issue here. 42 U.S.C. § 2014(w) (emphasis added).

The threshold question in actions involving radioactive material is whether it meets the statutory definition of public liability action. *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 855 (3d Cir. 1991). When the definitional elements are present, the PAA applies and is controlling. *E.g.*, *id.* Application of the PAA has significant procedural and substantive impact. Specifically, a federal cause of action is created, and federal jurisdiction established. *Id.* at 856. And the "federal cause of action supplants the prior state cause of action." *O'Conner*, 13 F.3d at 1100. As the Sixth Circuit Court of Appeals explained in the TMI Litigation, "After the [1988 amendment to the PAA], no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the [PAA] or *it is not compensable at all*." 940 F.2d at 854.

A majority of courts analyzing the PAA have found it completely preempts all state causes of action for a public liability action. *E.g., Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997); *O'Conner*, 13 F.3d at 1101 (3d Cir.); *In re TMI*, 940 F.2d at 856 (7th Cir.); *Adkins v. Chevron Corp.*, 960 F.Supp.2d 761, 767–68 (E.D. Tenn. 2012); *O'Connor v. Boeing North American, Inc.*, 2005 WL 6035255, *37 (C.D. Cal. Aug. 18, 2005). While the Eighth

5

Circuit Court of Appeals has not spoken on the preemption issue, the U.S. District Court for the Eastern District of Missouri has. *McClurg v. MI Holdings, Inc.*, 933 F.Supp.2d 1179, 1186 (E.D. Mo. 2013). Analyzing the propriety of state law claims, the *McClurg* court followed the majority position and dismissed plaintiffs' state law claims because they were redundant and completely preempted by the PAA. *Id.*

Federal preemption can be express or implied. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 203–04 (1983). Implied preemption occurs when "a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room" for supplementation or enforcement of state law. *Id.* at 204 (internal quotation omitted). Moreover, state law is preempted to the extent it conflicts with federal law. *Id.* In the arena of radiation and nuclear safety, the U.S. Supreme Court has held "states are precluded from regulating the safety aspect of nuclear energy." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 240–41 (1984). Based on this Supreme Court precedent, as circuit courts construing the PAA have held,[2] complete preemption of state law occurs because "the right to control the safety aspects of nuclear power is exclusively federal." *In re TMI*, 940 F.2d at 858.

Once an action is deemed a public liability action "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." 42 U.S.C. § 2014(hh). Some plaintiffs have misconstrued this reference to state law as allowing state law

---

[2] Plaintiffs may rely on *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088 (10th Cir. 2015), to claim their state law causes of action are not preempted. But *Cook* only proves the litigation adage that bad cases make bad law. In *Cook,* the parties essentially agreed, contrary to the case facts, that the incident was not a "nuclear incident" as defined in the PAA, and the defendants waived "implied preemption" arguments. *Id.* at 1090, 1092. This faulty premise and other case issues are clearly distinguishable from the case at bar.

causes of action. But reviewing courts have dispelled this notion. "[S]tate law claims cannot stand as separate causes of action." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997). Rather all claims merge into a single federal cause of action. *Id.* State law inconsistent with federal law is thereby preempted. *Id.* Because the standard of care owed to the public is controlled exclusively by federal law, state law related to a standard of care is preempted. *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994).

With this legal background, the threshold question for the Court is whether Plaintiffs' seven-count Petition meets the definitional elements of a public liability action. Because, as explained below, each count in Plaintiffs' Petition states a claim for a public liability action, and seeks to impose a state law standard of care, their state law claims are preempted by the PAA and must be dismissed.

### 2. The PAA is the Exclusive Remedy for Plaintiffs' Claims Because They Have Pleaded a Public Liability Action.

As an initial point, Mallinckrodt must dispel the notion that the well-pleaded complaint rule allows Plaintiffs to perform an end run around the PAA. When a plaintiff pleads as to avoid asserting federal law, the artful pleading exception to the well-pleaded complaint rule empowers the court to analyze the substance and nature of the case to determine whether it falls within the scope of complete preemption. *E.g., State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1109, n. 4 (8th Cir. 1999). The logical effect of "artfully pleading" a claim subject to complete preemption is to transform the case into one arising under federal law, thus displacing plaintiff's state law claims. *E.g.*, *Missouri v. Webb*, No. 4:11CV1237, 2012 WL 1033414, at *3 (E.D. Mo. Mar. 27, 2012); *also Hull v. Fallon,* 188 F.3d 939, 942 (8th Cir. 1999). Plaintiffs artfully pleaded their Petition to avoid the PAA. But no amount of artful pleading can save Plaintiffs' Petition from its exclusively federal nature.

7

Turning to Plaintiffs' Petition, the factual allegations confirm Plaintiffs have stated a public liability action stemming from a nuclear incident. For starters, the allegations allege the harm producing agent was radioactive material. (Petition, ¶¶ 1, 12, 86, 90, 91, 97, 106, 118, 119, 168, 173). The radioactive material is described as various isotopes of Uranium and Thorium and tailings and waste from the extraction of Uranium. (Petition, ¶¶ 33–35, 46, 48, 49, 51, 52, 54, 60, 88, 92, 119, 137–140, 143, 145, 150, 167, 169). Uranium, Thorium, and the related tailings and waste are source materials and byproducts, respectively. 42 U.S.C. §§ 2014(e), (z). Plaintiffs allege radioactive material and waste has encroached onto their property. (Petition, ¶¶ 106–108, 118, 130, 140, 155, 168, 173). Using terminology directly and indirectly from the PAA, specifically 42 U.S.C. section 2014(q), Plaintiffs claim they have suffered injury and lost the use and sustained damage to their property. (Petition, ¶¶ 12, 25, 110, 112, 113, 119, 122, 125, 132, 135, 144, 148, 150, 155, 156, 162, 168, 174, and Wherefore clause, subsection a). Alleging injury caused by or damage from radioactive source material or byproduct establishes the claim is one stemming from a nuclear incident. 42 U.S.C. § 2014 (q).

*Any* legal liability stemming from the nuclear incident is a public liability. 42 U.S.C. § 2014(w). Given the volume of pleading directly asserting the elements of a nuclear incident and public liability action, there is simply no denying their claims are controlled by the PAA.

### 3. Plaintiffs' State Law Causes of Action are Preempted by the PAA.

"In the field of nuclear safety, there is not only evidence of preemption, but also uncontradicted statements by the Supreme Court that federal nuclear safety regulations preempt all state safety regulations." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1104 (7th Cir. 1994). "[T]he field of nuclear safety has been occupied by federal regulation; there is no room for state law." *Id.* at 1105. Along these same lines, any state attempt to regulate nuclear

8

safety even through "negligence actions, is preempted by federal law." *Id.* "Imposing a standard of care other than the federal regulations would disturb the carefully crafted balance between private involvement and safety that Congress has achieved." *Id.* "Under *Pacific Gas & Electric Co.*, states are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." *In re TMI*, 940 F.2d at 859 (3d Cir. 1991) (referencing 461 U.S. 190, 204 (1983)).

This precedent establishes the standard of care regarding safe handling and disposal of nuclear material must come from federal regulations. Federal regulations provide the standard of care by specifying federal dose limits for certain situations. *E.g., Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998); *Adkins v. Chevron Corp.*, 960 F.Supp.2d. 761, 769 (E.D. Tenn. 2012). To maintain a public liability action under the PAA, the plaintiff "must plead and prove a breach of the relevant federal dose limits applicable to [the] nuclear incident." *Adkins,* 960 F.Supp.2d at 768. Failure to plead the appropriate standard of care, or attempt to plead state law causes of action, results in dismissal of the action. *Roberts*, 146 F.3d at 1308; *Adkins*, 960 F.3d at 768.

Each of the seven counts in Plaintiffs' Petition seeks recovery under state law causes of action that impose a preempted non-federal tort duty. Count V even alleges violations of state regulations. Not a single count alleges Mallinckrodt caused Plaintiffs or their property to be exposed to an amount of radioactive material in excess of federal regulatory standards. Rather, Plaintiffs allege Mallinckrodt improperly generated radioactive waste and failed to ensure others properly disposed of it. (Petition, ¶¶ 66, 104). Furthermore, they claim Mallinckrodt "owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and

9

7949532 v2

disposal of the radioactive wastes generated and owned by defendants in order to prevent significant injury to property and persons." (Petition, ¶ 138). Putting aside that neither Mallinckrodt nor its predecessors ever owned the radioactive material, transported it to the landfill, or disposed of it there, and Plaintiffs certainly do not plead they did, Plaintiffs allegations against Mallinckrodt wholly fail to allege that Plaintiffs were harmed by Mallinckrodt's failure to meet a federal regulatory duty owed to Plaintiffs.

Because each of these counts and causes of action are preempted, their Petition must be dismissed in its entirety.

### B. Plaintiffs' Petition Should be Dismissed For Failing to Provide Sufficient Factual Content to State a Plausible Claim Under the Price-Anderson Act.

Applying the *Twombly/Iqbal* standard of review to Plaintiffs' Petition demonstrates a broad failure to meet the minimum pleading standards.

#### 1. Plaintiffs' Petition Fails to State a Plausible Claim for a Public Liability Action Under the Price-Anderson Act.

Courts "have routinely dismissed plaintiffs' claims where they failed to plead sufficient facts to establish an element of their claim." *Adkins v. Chevron Corp.*, 960 F.Supp.2d 761, 772 (E.D. Tenn. 2012). With respect to the PAA, "[d]istrict court opinions overwhelmingly hold that an essential element of a public liability action is that each plaintiff's exposure exceeded the federal dose limits." *McClurg v. MI Holdings, Inc.*, 933 F.Supp.2d 1179, 1187 (E.D. Mo. 2013). "[I]n order to prevail on their public liability claim, plaintiffs must *plead* and prove a breach of the federal numerical dose limits." *Adkins*, 960 F.Supp.2d at 769 (emphasis added). Merely alleging in conclusory fashion a defendant has violated federal, state, and local laws is insufficient to state a claim under the *Twombly/Iqbal* standard. *Id.* at 772; *McClurg*, 933 F.Supp.2d at 1187.

10

7949532 v2

As explained above, Plaintiffs' Petition never alleges either they or their property was subjected to an amount of radioactive material in excess of federal regulatory standards. In fact, the Petition never even mentions the federal dose limits. The only allegation they make purportedly quantifying the radioactive material is a comparison to background levels. (Petition, §§ 7, 63). Federal dose limits, promulgated by the Nuclear Regulatory Commission, however, are not based on background levels of radiation. *See* 10 C.F.R. § 20.1301. Plaintiffs also make vague, conclusory statements that the "defendants" have violated unspecified standards regarding radiation safety. (*See, e.g.*, Petition, ¶ 81). When these threadbare, conclusory allegations are stripped away, as required by *Twombly/Iqbal*, the remaining allegations completely fail to sufficiently state a claim for a public liability action under the PAA, and Plaintiffs' claims must be dismissed for failing to state a claim upon which relief can be granted.

### 2. Plaintiffs' Petition Fails to State a Plausible Claim that Mallinckrodt Caused Their Alleged Damages.

Because 42 U.S.C. section 2014(hh) states a public liability action is derived from aspects of state substantive law, it is appropriate to look at Missouri law regarding the causal nexus required to support a tort claim. *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1010 (9th Cir. 2007). Well settled Missouri law establishes that a defendant cannot be held liable under a premises-liability theory unless the defendant had possession or control of the premises where the alleged injury occurred. *Pippin v. Hill-Rom Co.*, 615 F.3d 886, 890 (8th Cir. 2010); Wright v. St. Louis Produce Mkt. Inc., 43 S.W.3d 404, 411–14 (Mo. Ct. App. 2001). Similarly, a person is typically not responsible for harm caused by a chattel after the person's possession and control of the chattel have terminated. *See Finocchio v. Mahler*, 37 S.W.3d 300, 303 (Mo. Ct. App. 2000) (noting "courts show great reluctance to hold a defendant liable if the chain of causation includes a series of events, subsequent to the initial act or omission, over

which the defendant has absolutely no control"). Logically, these rules task the person or entity in the best position to control the danger—the person in custody and control of the property or chattel—with taking appropriate actions.

The gravamen of Plaintiffs' claims is their property has been contaminated by radioactive material that migrated from the Bridgeton and West Lake Landfills. (Petition, ¶¶ 102, 107). But, while Plaintiffs' Petition references Mallinckrodt in certain paragraphs, it fails to establish any nexus between Mallinckrodt and the landfill properties or radioactive material present there to support a plausible claim for liability. Starting with the migration of radioactive material from landfills, there is no claim that Mallinckrodt owned or had possession or control of the landfills at any time. To the contrary, Plaintiffs expressly alleged the landfill was owned and operated by defendants Bridgeton Landfill, LLC; Rock Road Industries, LLC; Republic Services, Inc.; and Allied Services, LLC. Applying the nexus rationale from a premises-liability action, and based on Plaintiffs' factual admissions, there is simply no basis to impose liability on Mallinckrodt for alleged radioactive material that migrated from the landfills.

Plaintiffs may claim Mallinckrodt's liability stems from a purported connection to the alleged radioactive material, but this argument also fails. Plaintiffs' Petition admits Mallinckrodt was only "a private contractor to supply Uranium *processing services* to the government organizations involved in the Manhattan Project." (Petition, ¶ 45) (emphasis added). Although certain paragraphs errantly imply Mallinckrodt owned the radioactive material, Plaintiffs never expressly allege Mallinckrodt owned the material because it did not.

Delving deeper into Plaintiffs' allegations shows Mallinckrodt's connection with the alleged radioactive material ceased long before it was allegedly transported to a landfill or Plaintiffs were allegedly exposed to it. Plaintiffs state Mallinckrodt processed Uranium at its

12

downtown facility until 1957.  (Petition, § 50).  They contend defendant Cotter Corporation purchased the Uranium mill tailings in the late 1960s.  (Petition, ¶ 52).  Next, in 1973, they claim Cotter mixed the radioactive material with soil and, subsequently, disposed of the material in the West Lake Landfill.  (Petition, ¶¶ 53–54).  There is no claim Mallinckrodt had any connection to the material after 1957 or participated in transporting it to or disposing of it at the landfill.  But, even if the connection extended to the late 1960s, when Cotter allegedly assumed ownership of the material, *which Mallinckrodt never did*, any connection with Mallinckrodt terminated several years before the material ended up in the landfill.  Thus, Plaintiffs' own Petition establishes a clear timeline of demarcation between the end of Mallinckrodt's involvement with the material and its disposal in a landfill.

In short, Plaintiffs do not allege any injury from any radioactive material while it was in Mallinckrodt's possession, custody, or control, or from any of Mallinckrodt's alleged actions in processing the material at its downtown plant.  As such, there is no basis for liability against Mallinckrodt for Plaintiffs' alleged damages, and Plaintiffs' Petition must be dismissed for failing to state a claim upon which relief can be granted.

### 3. General References to "Defendants" in Plaintiffs' Petition Fail to Provide Mallinckrodt with Fair Notice of the Factual Claims Against It.

Federal Rule of Civil Procedure 8(a)(2) requires that defendants be provided "fair notice" of the claims brought against them.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  General allegations against a group of defendants as a whole will fail to meet the "fair notice" pleading requirement.  "[B]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint fail[s] to satisfy this minimum standard [set forth in Fed. R. Civ. P. 8]."  *Pierson, III v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009) (citations omitted).  This prohibition

13

against group pleading has been upheld by federal courts across the country.[3] Taken as a whole, the Petition fails to state a plausible claim that Mallinckrodt caused their alleged damages.

The general references and conclusory allegations against the "defendants" fail to give Mallinckrodt fair notice of the specific claims against it. Numerous times in their Petition, Plaintiffs make a general, conclusory allegation against the "defendants" without providing factual information distinguishing their conduct. For instance, paragraph 117 states "Defendants unreasonably and unlawfully stored and used radioactive materials at the Landfill, which joins Plaintiffs' property." Similar sentiments are expressed in paragraphs 129 and 161. These conclusory allegations are not supported by any specific pleaded facts and, on the contrary, are contradicted by the allegations that other defendants disposed of the material and operated the landfill. (Petition, ¶ 54). Paragraph 139 states Plaintiffs' belief that "some of the Radioactive Waste Defendants negligently encouraged the Landfill operators to use the radioactive wastes which were mixed with contaminated soil as daily cover." Given that "Radioactive Waste Defendants" includes several entities, including Mallinckrodt, it was imperative that Plaintiffs specify whether they were directing this allegation against Mallinckrodt. Although other more specific factual allegations would strongly suggest an answer in the negative, the Petition fails to

---

[3] *See e.g.*, *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, No. C-09-0511, 2010 WL 384736, *2 (N.D. Cal. Jan. 29, 2010) ("The fundamental difficulty with the complaint is that it fails to allege facts sufficient to put each defendant on notice of what it is that he, she or it is alleged to have done that gives rise to the claims asserted against him, her, or it. While long and colorful, the complaint nevertheless fails to adequately plead *facts* sufficient to inform each defendant of the specific allegations against it under each asserted cause of action, and many of the allegations simply lump all of the defendants together in a group.") (emphasis in original); *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 212 (D. Conn. 2007) (lumping various classes of defendants "into an undifferentiated mass" results in general cause of action that "fails to put the various defendants on notice of the allegations against them"); *Tully v. Bank of Am., N.A.*, No. 10-4734, 2011 WL 1882665, *6 (D. Minn. May 17, 2011) (holding that generally pleading causes of action against multiple defendants requires defendants and court to guess which specific allegations pertain to each defendant).

7949532 v2

provide Mallinckrodt fair notice on this issue.  In summary, Plaintiffs' Petition fails to provide fair notice of the claims against Mallinckrodt and must be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs failed to plead a plausible case on any claim stated in their Petition.  All of their claims are either preempted by federal law and/or fail to make a plausible showing that they are entitled to relief.  Therefore, under Rule 8(a) and 12(b)(6), Mallinckrodt respectfully requests the Court enter an Order dismissing Plaintiffs' Petition and for such other relief as the Court deems just and proper.

### ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 78-4.02, Mallinckrodt requests oral argument on its Motion to Dismiss Plaintiffs' Petition.  Oral argument is warranted to provide the opportunity to further discuss the important issues presented, the parties' position on these issues, and the cited case law.  In particular, oral argument will afford the parties an opportunity to discuss and answer any questions the Court may have regarding the specific pleading deficiencies.

Dated:  January 13, 2017

Respectfully submitted,

/s/  David R. Erickson
SHOOK, HARDY & BACON LLP
David R. Erickson, # 31532MO
Steven D. Soden, # 41917MO
Erica A. Ramsey, # 63225MO
2555 Grand Boulevard
Kansas City, MO  64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
derickson@shb.com
ssoden@shb.com
eramsey@shb.com

15

          ATTORNEYS FOR DEFENDANT MALLINCKRODT LLC, INCORRECTLY NAMED AS MI HOLDINGS, INC. AND MALLINCKRODT, INC.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 13, 2017, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record, and served the following by U.S. mail, first-class postage:

Daniel T. DeFeo
DeFeo & Kolker, LLC
1627 Main Street, Suite 801
Kansas City, MO 64108

and

Richard S. Lewis
Michaela Spero
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006

and

Michael Stag
Smith Stag, LLC
One Canal Place
365 Canal Street, Unit 2850
New Orleans, LA 70130

and

Barry J. Cooper, Jr.
Cooper Law Firm, L.L.C.
508 St. Philip Street
New Orleans, LA 70116

7949532 v2

and

Winston Calvert
W. Calvert, LLC
7700 Bonhomme Avenue, Suite 350
St. Louis, MO 63105

and

Steven J. Stolze
Holland Law
300 North Tucker, Suite 800
St. Louis, MO 63102

*Attorneys for Plaintiffs*

William Garland
Lathrop and Gage, LLP
2345 Grand Boulevard
Suite 2800
Kansas City, MO  64108

*Attorney for Allied Services L.L.C.*

Erin Lynn Brooks
Dale A. Guariglia
Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO  63102

*Attorney for Commonwealth Edison Company,*
*Cotter Corporation N.S.L. and Exelon Corporation*

/s/  David R. Erickson
One of the Attorneys for Defendant
Mallinckrodt LLC, incorrectly named as MI
Holdings, Inc. and Mallinckrodt, Inc.

17

7949532 v2