UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAILEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 24 CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Husband and wife plaintiffs, Michael and Robbin Dailey, seek damages and

injunctive relief for radioactive contamination of their home allegedly caused by

neighboring West Lake Landfill, located in North St. Louis County, Missouri. The

Daileys assert that their property has been damaged by soil, dust, and air

contamination from improper generation, handling, storage, and disposal of

radioactive materials by six corporate defendants. The defendants consist of

landfill owners and operators, and radioactive waste generators and disposers.

The Daileys filed suit in St. Louis County Circuit Court, pleading various

state-law tort theories. Defendants removed the action to this court arguing that

the allegations arise under federal law – specifically the Price-Anderson Act (PAA)

as amended in 1988, 42 U.S.C. § 2210, *et seq.* – which provides a federal

compensation regime for damages resulting from a nuclear incident. After

removal, the Daileys filed a motion to remand but later withdrew it and filed a First Amended Complaint with a PAA claim and various state-law tort claims. Now before the Court are defendants' multiple motions to dismiss the amended complaint. Defendants argue that the amended complaint fails to properly allege a claim under the PAA, that the Daileys' state-law claims are preempted by federal law, and that medical monitoring and emotional distress claims are not allowed here because no bodily injury is alleged. Defendant Mallinckrodt joins the other defendants' arguments for dismissal but also seeks dismissal of the amended complaint on the grounds that it fails to provide Mallinckrodt with fair notice, and it fails to plead a sufficient nexus between Mallinckrodt and the alleged damages.

Although the Eighth Circuit has not addressed the issue of PAA preemption of state-law claims, numerous other circuit courts have found that the PAA is the sole avenue for recovery when a public liability action for a nuclear incident is plead. I agree. Therefore, the Daileys' state-law tort claims for nuisance and alternatively, for strict liability, shall be dismissed. However, the amended complaint withstands dismissal under Rule 12(b)(6) as to the sufficiency of the pleading of a PAA claim and as to fair notice to defendant Mallinckrodt. But because the Daileys only allege property damage and not bodily injury, their requests for medical monitoring and emotional distress relief are not allowed under the PAA and will be stricken.

## Background

From 1942 to 1957, under contract with United States government organizations, defendant Mallinckrodt LLC processed natural uranium into various uranium compounds at a facility located in downtown St. Louis, Missouri. The processing was part of the Manhattan Project – a United States research project designed to develop the first nuclear weapons. The first step in the processing, called "milling," generated a sandy waste material known as "mill tailings," which contain radioactive decay products. In the late 1940's, the Manhattan Project acquired an additional tract of land near Lambert Airport – the St. Louis Airport Site (SLAPS) – for storage of mill tailings and other scrap waste from the uranium processing occurring at the downtown site.

Subsequently, some mill tailings were buried at SLAPS near Coldwater Creek and others were moved in the 1960's from SLAPS to a storage site on Latty Avenue in Hazelwood, Missouri. Around the same time, defendant Cotter Corporation purchased mill tailings from both SLAPS and Latty Avenue. Cotter eventually mixed the tailings with radioactively contaminated soil and sold the mixture as "daily cover" for landfill operations. In 1973, Cotter disposed of the daily cover mixture by dumping it at West Lake Landfill located in Bridgeton, Missouri. According to the Daileys, the Landfill was never an adequate storage or disposal site for radioactive waste, and therefore resulted in contamination of the

surrounding communities.  As of December 31, 2004, the Landfill stopped

accepting waste and is now only used as a transfer station.  The Landfill is

currently under the regulation of the Environmental Protection Agency (EPA)

pursuant to the Comprehensive Environmental Response, Compensation, and

Liability Act (CERCLA).

In 1999, plaintiffs Michael and Robbin Dailey purchased a home on a parcel

of real property located in Bridgeton, Missouri adjacent to the Landfill.[1]  The

Daileys allege that their property is contaminated with radioactive material that has

migrated over from the Landfill.  Samples of soil from their yard, and dust from

within their home, confirm a highly-elevated presence of radioactive particles.

Trees in the vicinity of their property contain radiological and organic

contamination.  Air samples from their property are contaminated by radioactive

Radon gas emissions and are frequently offensive in odor.  Surface-water runoff

that migrates to their property from the Landfill contains radioactive

contamination.  The Daileys allege that this off-site contamination also occurred

from careless and reckless hauling of the radioactive waste, which resulted in spills

during transport.  In 2016, the Daileys learned of this radioactive waste

---

[1]  The amended complaint defines its use of the word "Landfill" as referring to "several inactive
landfills including West Lake and Bridgeton" Landfills.  ECF No. 70 at ¶ 3.  However, the
specific allegations of the complaint name West Lake Landfill alone, therefore that appears to be
the only relevant landfill at issue in this case.  *Id*. at ¶ 46-80.

contamination, which has resulted in the loss of use and enjoyment of their property and diminished their property value.

The Daileys bring this suit against six defendants, who can be divided into two categories: (1) "Landfill Defendants" are owners and operators of the Landfill including defendants Bridgeton Landfill, LLC; Republic Services, Inc.; Allied Services, LLC; and Rock Road Industries, Inc., and (2) "Radioactive Waste Defendants" are waste generators and disposers including defendants Mallinckrodt LLC and Cotter Corporation.

Mallinckrodt filed a motion to dismiss for failure to state a claim based on Rules 8(a) and 12(b)(6), Fed. R. Civ. P., and also joined the motion to dismiss filed by the five other defendants. According to Mallinckrodt, the amended complaint: (1) fails to state a valid PAA claim in that it does not allege radiation exposure in excess of the federal dosage limits; (2) requires dismissal of state-law claims preempted by the PAA and federal law; and (3) fails to plead a plausible case for causation of damages by Mallinckrodt and fails to provide fair notice of the factual claims against Mallinckrodt. The other defendants join Mallinckrodt's first two arguments concerning preemption and standard of care, and also argue that medical monitoring and emotional damages are not recoverable under the PAA in this case.

This case is similar to many other cases that have been brought in this district by a neighbor of West Lake Landfill based on alleged odor and property contamination. Some of the previously-filed cases are still pending, and others have been dismissed after settlement. Some of the arguments before the court in these motions to dismiss were raised by the same defendants in earlier cases. *See McClurg v. MI Holdings, Inc.*, 933 F.Supp.2d 1179 (E.D. Mo. 2013); *McClurg v. Mallinckrodt, Inc.*, No. 4:12 CV 361 AGF, Nuclear Reg. Rep. P 20,755 (E.D. Mo. Feb. 27, 2015).

**Discussion**

## I.      Motion to Dismiss Standard

The purpose of a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of the complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion

to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II.     The PAA and Nuclear Safety

In 1957, Congress passed the Price-Anderson Act (PAA), 42 U.S.C. § 2210 *et seq.*, for the dual purposes of protecting the public and encouraging the development of the atomic energy industry.  *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 64 (1978) (quoting 42 U.S.C. § 2012(i)).  Before the PAA, private utilities were reluctant to enter the field of nuclear power because of the risk of potentially high liability in the case of a nuclear incident.  The PAA limited the civil liability of nuclear plant operators and provided federal funds to help cover damages from nuclear accidents.  *Id.*  Since its enactment, the PAA has been amended three times.  The most recent amendments in 1988 created federal court jurisdiction to adjudicate public liability actions arising from nuclear incidents.  42 U.S.C. § 2014(hh); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1095-96 (7th Cir. 1994).  However, even prior to the 1988 Amendments, the Supreme Court confirmed Congress' intent that "the safety of nuclear technology [be] the exclusive business of the federal government." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 208 (1983).

Under the PAA, a "public liability action" is defined as "any suit asserting public liability."  42 U.S.C. § 2014(hh).  "Public liability" is "any legal liability

arising out of or resulting from a nuclear incident." *Id*. § 2014(w). A "nuclear incident" involves "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id*. § 2014(q). In summary, a " 'public liability action' is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011). In such an action, the substantive rules for decision are derived from state law unless such law is inconsistent with the PAA. 42 U.S.C. § 2014(hh).

## III.    Preemption of State-Law Claims

Count I of the amended complaint is brought as a "public liability action" under the PAA. Counts II through IV are tort claims for Permanent Nuisance, Temporary Nuisance, and alternatively, Strict Liability. Defendants argue in their motion to dismiss that the PAA is the exclusive federal cause of action for claims arising from nuclear incidents; therefore, the Daileys' three state-law tort claims are preempted by the PAA and should be dismissed. The Daileys assert that the PAA does not preempt state-law claims based on its plain language, structure, and history; that Congressional action and inaction indicate an intent to allow state-law

claims under the PAA; and that defendants fail to meet their burden of demonstrating either field or conflict preemption.

State law can be preempted in either of two ways: (1) when Congress evidences an intent to occupy a given field and therefore any state law falling within that field is preempted; and (2) when Congress has not entirely displaced state regulation over a matter but the state law is still preempted to the extent it conflicts with federal law – that is, when it is impossible to comply with both state and federal law, or where the state law is an obstacle to the accomplishment of the full purposes and objectives of Congress. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (internal citations omitted).

The Supreme Court examined the PAA in relation to preemption of state-law claims in 1984. The Court found that Congress intended – both when the PAA was enacted and later when it was amended in 1966 – not to preempt state-law remedies: "Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents." *Silkwood,* 464 U.S. at 256. According to the Supreme Court, "preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law." *Id.*

In 1988, four years after the *Silkwood* decision, Congress amended the PAA to expressly create federal court jurisdiction to adjudicate public liability actions arising from nuclear incidents.  42 U.S.C. § 2014(hh); *O'Conner,* 13 F.3d at 1095-96.  In the amended language, Congress explicitly incorporated state law into the PAA except to the extent that state law is inconsistent with federal law.  42 U.S.C. § 2014(hh) ("the substantive rules for decision in such [public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section"); *see Nieman*, 108 F.3d at 1552.  The Supreme Court subsequently described the PAA as containing an "unusual preemption provision" that "transforms into a federal action" any public liability action.  *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999).

Although the Eighth Circuit has not ruled on the issue of PAA preemption of state-law claims, other appellate courts have exhaustively examined this issue following the 1988 amendments to the PAA, and they have found federal preemption of state-law claims for nuclear incidents.  *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing a nuclear incident claim); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts

state law claims and they "cannot stand as separate causes of action"); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); *O'Conner*, 13 F.3d at 1100 (a federal cause of action for a nuclear safety claim "supplants" the prior state cause of action); *In re TMI Litig. Cases Consol. II (TMI II)*, 940 F.2d 832, 854 (3d Cir. 1991) (a nuclear incident claim is "compensable under the [PAA] or *it is not compensable at all*.").

The Daileys rely heavily on the Tenth Circuit decision in *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088 (10th Cir. 2015), to argue that the PAA does not preempt their state-law claims. In *Cook*, the appellate court examined the history and text of the PAA and found that Congress anticipated the possibility of "lesser nuclear occurrences," – i.e., incidents that fail to rise to the level of nuclear incidents as defined by the PAA. 790 F.3d at 1095. According to the Tenth Circuit, when a case does not rise to the level of injuries and damages involved in more serious nuclear incidents, a plaintiff can still recover under state tort law as a lesser nuclear occurrence. *Id.* at 1096. The Tenth Circuit also held that when a nuclear incident is alleged but unproven, the injured parties can seek traditional state-law remedies. *Id.* at 1095.

The Daileys argue that their state-law claims are not preempted by the PAA because *Cook* holds that "Congress did not intend for the PAA to preempt state tort

law causes of action for nuclear incidents that do not rise to the level of PAA protection." ECF No. 77 at 14 (citing *Cook*, 790 F.3d at 1094). According to the Daileys, the "PAA statute cannot preempt conduct or circumstances that the statute does not cover in the first place" because "the PAA does not preempt state law claims for radioactive waste contamination that do[] not qualify as a 'nuclear incident' as that term is defined by the PAA." ECF No. 77 at 13. The Daileys assert that if they are unable to "prove a violation of the federal standard of care, then the PAA would not apply to this case, and any preemption emanating from the statute would not apply." *Id.*

As I read it, the Daileys seek to maintain their state tort claims just in case their PAA claim fails. I agree with them that *Cook* distinguishes between a PAA claim and a "lesser nuclear occurrence;" however, I do not agree that *Cook* proposes that both such claims can proceed simultaneously based on the same claim. The *Cook* court stated that "federal claims for larger nuclear incidents … coexist with state law claims for lesser nuclear occurrences." 790 F.3d at 1096. But the court was not discussing such claims coexisting *in the same suit based on the same occurrence* – only that both types of claims are available forms of relief, depending on the nature of the occurrence alleged in a case.

I agree with the many appellate courts that have examined the text, structure, history, and purpose of the PAA and found that it preempts state-law claims when

a nuclear incident is alleged. There is no need to reexamine this issue here. Allowing state-law claims to proceed simultaneously with a PAA claim would create an obstacle to the accomplishment of the purpose and objective of the PAA. There is an irreconcilable conflict in allowing both the state-law and PAA claims to proceed simultaneously.

The Daileys cannot have their cake and eat it too. Although their initial petition filed in state court contained no PAA claim, after removal to this court, they amended their complaint to contain such a claim. Because the Daileys allege that defendants "caused damage to Plaintiffs' property and/or the loss of use of the Plaintiffs' property which constitutes a 'nuclear incident' or series of 'nuclear incidents' under the Price Anderson Act," their amended complaint asserts a federal cause of action under the PAA that supplants all possible state causes of action. ECF No. 70 at ¶ 104 p.30.[2] When a nuclear incident under the PAA is asserted, the circumstances under which a "lesser nuclear occurrence" can be brought under state tort law are irrelevant. *See TMI II*, 940 F.2d at 854-55 ("Any conceivable state tort action which might remain available to a plaintiff following the determination that his claim could not qualify as a public liability action …

---

[2] The Daileys' amended complaint does not contain sequentially numbered paragraphs. The paragraph numbers jump from 124 down to 100 on page 34, jump from 112 to 126 on page 36, and jump from 136 to 164 on page 38. As a result, two different paragraphs are labelled by each of the numbers 100 to 112, and no paragraphs are labelled 125 or 137 through 163. In order to clarify citations due to these errors, page numbers in addition to paragraph numbers have been added as needed.

would be some other species of tort altogether, and the fact that the state court might recognize such a tort has no relevance to the [PAA] scheme."). This finding is consistent with an earlier case before this district court involving some of the same defendants. *See McClurg v. MI Holdings, Inc.*, 933 F.Supp.2d 1179, 1186 (E.D. Mo. 2013).[3]

The Daileys contend that if the Court finds that the PAA preempts state-law claims, they can still pursue their nuisance claims for noxious odors because these "nuisance claims do not result or arise from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." ECF No. 77 at 26. Under Missouri law, a "nuisance" is "the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his [or her] property." *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). The allegations of the amended complaint for both Count II (Permanent Nuisance) and Count III (Temporary Nuisance) assert that the defendants "caused and contributed to the radioactive contamination of Plaintiffs' property" which resulted in an "unreasonable interference with

---

[3] In *McClurg*, the court dismissed the state-law claims that were brought with a PAA claim, quoting the Sixth Circuit's holding that plaintiffs who assert a nuclear incident claim as defined by the PAA "can sue under the Price-Anderson Act, as amended, or not at all." 933 F.Supp.2d at 1186 (quoting *Nieman*, 108 F.3d at 1553). The court expressed approval of other court decisions finding preemption of state-law claims, however, it did not fully analyze preemption because the plaintiffs acknowledged that their state claims were redundant. *Id.* at 1186-87. Here, the Daileys' claims are similarly redundant in that the PAA claim and the state-law claims are brought based on the same set of facts and circumstances.

Plaintiffs' use and enjoyment" of their property. ECF No. 70 at ¶ 104 p. 34, 107 p.35, 130-31. The Court notes that almost every paragraph of the amended complaint in these two state-law counts mentions the radioactive contamination. *See Id.* at ¶ 100-36 p.34-38. Undoubtedly, these allegations fall under the PAA's definition of "nuclear incident" which includes any "loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q). The allegations of the Daileys' nuisance claims fall within the purview of PAA and are therefore preempted like any other state-law claims.

Based on the rationale provided by many appellate courts, and consistent with the past ruling of this court, I find that the Daileys' PAA claim creates a federal cause of action that preempts their state tort claims. Counts II through IV of the amended complaint will be dismissed.

## IV.   Federal Duty of Care

The parties dispute what standard of care applies to a claim brought under the PAA, and what elements must be plead for a PAA claim to survive dismissal. According to defendants, the Daileys' PAA claim should be dismissed because they have "failed to allege exposure to radiation exceeding the applicable Atomic Energy Commission ("AEC") or Nuclear Regulatory Commission ("NRC")

radiation dose limits and have not identified any relevant federal nuclear safety standards that Defendants may have breached." ECF No. 72 at 9. Nuclear safety standards have changed over the years but under the current NRC (the AEC's successor) guidelines, the annual permissible dose limit for individual members of the general public exposed to radiation as a result of activities at NRC-licensed operations is not to exceed 0.1 rem (1mSv). 10 C.F.R. § 20.1301(a)(1).

According to the amended complaint, the Daileys' property has been "contaminated by radioactive material in amounts greater than allowed under federal safety regulations for unrestricted use" and this has resulted in the Daileys being exposed to "a dose in excess of the 15 millirem per year effective dose equivalent maximum dose limit for humans deemed to be protective by the EPA." ECF No. 70 at ¶ 90-91. These allegations plead exposure in excess of the amount allowable by the EPA, but not in excess of the federal dose limits promulgated by the NRC in 10 C.F.R. § 20.1301.

The Daileys argue that NRC regulations are not applicable here because the Landfill at issue is not a NRC-licensed facility but an EPA Superfund / CERCLA site so the use of the EPA guidelines is sufficient. The Daileys also contend that it is premature to decide the standard of care this early in the suit because application of a specific dosing limit is not required at this stage of the litigation. Regardless,

they assert that they have pled a valid PAA claim and that the PAA does not state that a dosing limit is required for a public liability action to proceed.

Many federal circuit courts have found that any public liability action brought under the PAA must apply federal nuclear safety regulations as the applicable standard of care. *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986,1003 (9th Cir. 2008) (nuclear operator liability for strict liability claim brought for personal injuries requires breach of federally-imposed dose limits); *Roberts*, 146 F.3d at 1308 ("federal safety regulations conclusively establish the duty of care owed in a public liability action" brought for personal injuries resulting from exposure to radiation); *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995) (duty of care for personal injuries claims from radiation exposure is measured by whether defendants released radiation in excess of levels permitted by federal exposure regulations); *O'Conner*, 13 F.3d at 1105 (federal regulations must provide the measure of a defendant's duty in a public liability action for personal injuries arising from radiation exposure). A previous case in this district involving two of the same defendants also held that federal dose limits establish the duty of care for a PAA claim brought for personal injuries sustained as a result of exposure to radioactive substances. *McClurg*, 933 F.Supp.2d at 1187. However, these cases all involved allegations of personal injuries. The Sixth Circuit even summarized its position as having "joined with almost every other circuit in holding that NRC

safety regulations conclusively establish the duty of care owed by the defendants in radiation safety *personal injury* cases governed by the 1998 amendments to the Price-Anderson Act." *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 398 (6th Cir. 2002) (citing *Nieman*, 108 F.3d at 1552-53) (emphasis added).

In this case, the Daileys are alleging property damage only and not personal injury. The amended complaint repeatedly mentions the harm radiation can have on a person's body. ECF No. 70 at ¶ 4, 27, 29-33, 78, & 92. But it does not contain any allegations that the Daileys specifically have suffered bodily injury from radiation contamination – only that their property has been damaged. *Id.* at ¶ 104 p.30, 110 p.31, 114, 118, 120-21, & 123 ("Plaintiffs' are entitled to recover damages for damage to property and/or loss of use of property"). In their response in opposition to dismissal, the Daileys describe their claim as an "Alleged Property Damage Claim" and state they "are no [sic] seeking 'bodily injury' damages." ECF No. 77 at 7, 30.

Defendants point to an unreported case out of the Northern District of Illinois for the proposition that federal dose limits apply to both personal injury and property damage claims. *See Reeves v. Commonwealth Edison Co.*, No. 06 C 5540, 2008 WL 239030 (N.D. Ill. Jan. 28, 2008). The district court in that case relied on Seventh Circuit precedent, *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994), for the holding that "federal regulations provide the

applicable standard of care in a public liability action, whether or not the claim is for property damages." *Reeves*, 2008 WL 239030, at *4. However, the plaintiff in *O'Conner* alleged personal injuries from overexposure to radiation – it was not a property damages case. 13 F.3d at 1093. Also, the facts of *Reeves* are distinguishable from this case in that the facility at issue was licensed by the NRC. 2008 WL 239030, at *2.[4]

Based on a plain reading of the NRC standards, the federal dose limit applies to a NRC "licensee" and sets the limit of exposure for "individual members of the public." 10 C.F.R. § 20.1301. On their face, these standards do not seem applicable to a property damage claim against a non-NRC licensed facility. Also, defendants point to no specific text of the PAA that requires that the Daileys allege a violation in excess of the federal dosing standard in order to plead a PAA claim. In considering a Rule 12(b)(6) motion, I must assume the factual allegations of the amended complaint are true and construe them in the Daileys' favor. The Daileys' amended complaint contains enough factual allegations of a violation of the PAA to survive a motion to dismiss. I agree with the Daileys that application of a specific federal dosing standard of care at this stage of the litigation is premature.

---

[4] Defendants also cite *Adkins v. Chevron Corp.*, 960 F.Supp.2d 761 (E.D. Tenn. 2012) as authority for the federal dosing limits applying to a PAA claim regardless of whether plaintiff alleges personal injury or property damage. ECF No. 72 at 11. However, the class claims in *Adkins* are distinguishable in that they involved "personal injury and/or property damage." *Id.* at 763.

It might be determined at a later stage in this litigation that the NRC federal dose limits are applicable to the Daileys' property damage claim, but it would be premature to dismiss the Daileys' PAA claim now.

**V.    Sufficiency of Allegations and Notice to Defendant Mallinckrodt**

Defendant Mallinckrodt argues in its separate motion to dismiss that the Daileys have failed to plead a plausible claim that Mallinckrodt caused their alleged damages because the factual allegations of the amended complaint are insufficient to establish a nexus between Mallinckrodt and the landfill properties, radioactive material, and damages.  Mallinckrodt also argues that because of the amended complaint's references to "defendants" generally, it fails to provide Mallinckrodt with fair notice of the factual claims against it specifically.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although it is true that the amended complaint makes many allegations against "defendants" generally, there are sufficient specific factual allegations directed at Mallinckrodt to provide notice.  From 1942 to 1957, Mallinckrodt brought highly concentrated uranium containing high levels of radium from Africa into a facility in downtown St. Louis for uranium refinement.  ECF No. 70 at ¶ 1,

22, 36.  Mallinckrodt was working as a private contractor processing uranium for the government's nuclear weapon development program.  *Id.* at ¶ 37.  At its facility just west of the Mississippi River in downtown St. Louis, Mallinckrodt processed uranium by chemically milling the natural uranium ore to extract the uranium and create a yellow powder that could be processed into nuclear fuel.  The waste product of the milling process was "mill tailings" which contained radioactive decay products and heavy metals.  *Id.* at ¶ 38.  These mill tailings were transported by someone other than Mallinckrodt to various storage sites, eventually made their way into the Landfill, and contaminated the Daileys' adjoining property.  *Id.* at ¶ 42-70.  The radioactive contamination found on the Daileys' property in the soil, dust, and Radon gas contain the same "fingerprint," or chemical profile, as the uranium ore brought into St. Louis from Africa by Mallinckrodt many years earlier.  *Id.* at ¶ 86, 94, 98.

In a public liability action under the PAA, the substantive rules for decision are derived from the law of state where the nuclear incident occurred, unless such law is inconsistent with federal law.  42 U.S.C. § 2014(hh).  In this case, the Daileys allege tort liability based on temporary and permanent nuisance, or alternatively, strict liability.  Missouri law recognizes both public and private nuisance.  Private nuisance is "the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his

[or her] property." *Frank*, 687 S.W.2d at 880. The focus is on the defendant's unreasonable interference with the plaintiff's use and enjoyment of his land. *Id.* A private nuisance action rests on tort liability. *Peters v. ContiGroup*, 292 S.W.3d 380, 385 (Mo. Ct. App. 2009)). Negligence may constitute a nuisance when there has been an unreasonable use of land. *Frank*, 687 S.W.2d at 882. A party does not have to be the property owner to be held liable for nuisance. *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 173 (Mo. Ct. App. 2012) (internal citations omitted). "Indeed, 'one who creates a nuisance *whether on his property or not*, is liable for the damage caused thereby.' " *Id.* (emphasis original). In Missouri, joint tort-feasors are jointly and severally liable for the harm caused to plaintiffs. *Hance v. Altom*, 326 S.W.3d 133, 136 (Mo. Ct. App. 2010). The essential elements for recovery in a private nuisance action are injury, damages, and causation. *Bush v. City of Cottleville*, 411 S.W.3d 860, 866 (Mo. Ct. App. 2013).

Accepting as true the factual allegations of the amended complaint, Mallinckrodt did not ensure the safe handling, storage, and disposal of the radioactive waste that it generated. These actions breached a duty of care to the Daileys and the public generally. Due in part to Mallinckrodt's negligent disposal of the radioactive waste, the Daileys' property is now contaminated. This contamination has resulted in a loss of use and enjoyment of the Daileys' property, and also a diminishment in property value. ECF No. 70 at ¶ 112-24 p. 32-34.

In evaluating a Rule 12(b)(6) motion, I do not weigh the factual allegations or determine their sufficiency or credibility at this stage of the litigation, I just construe them in favor of the Daileys.  Although many of the allegations are directed at "defendants" generally, I find that there are sufficient factual allegations to state a PAA claim against Mallinckrodt.  Missouri nuisance law does not require that Mallinckrodt be an owner of the offending property, which in this case is the Landfill.  The Daileys have alleged a sufficient nexus to Mallinckrodt's processing of uranium by alleging that the radioactive contamination found on their property contains the same chemical fingerprint as the waste created by Mallinckrodt.  I will deny Mallinckrodt's motion to dismiss.

## VI.    Medical Monitoring and Emotional Damages

Finally, all defendants join in arguing that the Daileys' claims for medical monitoring and emotional damages are not cognizable under the PAA because they have not alleged any physical injury.  The Daileys respond that it is premature to dismiss their medical monitoring claim as discovery will filter out which types of claims will ultimately go forward.  However, they make no response to dismissal of an emotional damages claim in a PAA action.  The Daileys also attempt to clarify that they are not seeking medical monitoring in the common sense but instead "monitoring as a form of injunctive relief, as a remedy to the property

nuisance they are suffering" – labeling it as "environmental monitoring costs." ECF No. 77 at 32.

Under 'Count II' of the amended complaint, the Daileys seek "medical monitoring in the form of environmental testing, clean-up, and medical tests." ECF No. 70 ¶ 112 p. 36. Traditionally, medical monitoring is done for the purpose of detecting the onset of disease. This understanding is consistent with the Daileys' request for "medical tests." However, they also include "environmental testing" and "clean-up" in their medical monitoring claim. To the extent that the Daileys seek medical monitoring, i.e. medical testing, in regards to their claim for property damage under the PAA, this claim is dismissed because there are no allegations of bodily injury. *See In re Berg Litig.*, 293 F.3d at 1132-33 (holding that a medical monitoring claim lacks the jurisdictional requirements of the PAA when there is only future risk of disease but no present physical injury). The Daileys fail to respond to defendants' argument concerning emotional damages. Regardless, I agree with defendants that an emotional distress claim without alleged physical injury also fails under the PAA. *Id.* at 1130-32 (statutory language, legislative history, and case law all support the conclusion that the PAA requires bodily injury for an emotional distress claim).

## Conclusion

The Price-Anderson Act is the sole means for relief when a public liability action for a nuclear incident is plead – as the Daileys have done here. The federal PAA claim preempts all state-law claims brought based on the same factual allegations. The Daileys' state tort claims in Counts II through IV of the amended complaint will be dismissed. The amended complaint does, however, plead the basic elements of a public liability action sufficient to survive dismissal under Rule 12(b)(6). Although the amended complaint does not allege violations of the NRC's radiation exposure limits for individual members of the public as mandated for licensed facilities, the Daileys have stated sufficient allegations for a property damage claim under the PAA to survive dismissal. Their allegations against defendant Mallinckrodt are adequate to state a valid claim based on Missouri tort liability, and provide fair notice. Finally, because the Daileys have only alleged property damage and not bodily injury, their medical monitoring and emotional distress claims are not allowable under the PAA.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Mallinckrodt LLC's motion to dismiss [#71] and defendants Allied Services LLC, Bridgeton Landfill LLC, Cotter Corporation, Republic Services Inc., and Rock Road Industries, Inc.'s motion to dismiss [#72] are **GRANTED in part and DENIED in part**. Counts II through

IV of the First Amended Complaint are dismissed. Plaintiffs' claims for medical monitoring and emotional distress are also dismissed.

**IT IS FURTHER ORDERED** that defendants' requests for oral argument on the motions to dismiss are **DENIED**.

This case will be set for a Rule 16 Scheduling Conference by separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2017.