IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY,<br><br>                          Plaintiffs,<br><br>        v.<br><br>BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., COTTER CORPORATION,<br><br>                          Defendants. | Case No.  4:17-cv-00024<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT COTTER CORPORATION (N.S.L.)'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Defendant Cotter Corporation (N.S.L.) ("Cotter") (improperly pleaded as Cotter Corporation), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Remand (Dkt. 174).

## I.      PRELIMINARY STATEMENT

Plaintiffs' Motion to Remand must be denied because their arguments are based on an incorrect reading of the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq*.  Contrary to Plaintiffs' contentions – which are rooted in heavily criticized and generally rejected case law – neither a license nor an indemnification agreement is required for there to be a "nuclear incident" under the PAA, or for a finding of federal jurisdiction pursuant to the PAA.  Rather, Plaintiffs' state law claims are preempted, and federal jurisdiction is proper, because their Second Amended Complaint ("SAC") asserts that Cotter is liable for a nuclear incident in which the hazardous properties of radioactive material caused them property damage.  Numerous courts have rejected the flawed analysis that Plaintiffs employ, and neither the plain text of the PAA nor its legislative history support their contentions.  Furthermore, Plaintiffs do not come close to demonstrating that PAA preemption of their state law claims would be arbitrary and irrational, and thus, their Due Process Clause argument fails.  For these reasons, remand is not warranted, and Plaintiffs' motion must be denied.

## II.      LEGAL STANDARD FOR COMPLETE PREEMPTION

"Generally, an action arises under federal law only if issues of federal law are raised in the plaintiff's well-pleaded complaint."  *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir. 1999) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  "An exception to this rule is the 'complete preemption' doctrine.  This doctrine provides that 'to the extent that Congress has displaced a plaintiff's state law claim a plaintiff's attempt to utilize the displaced state law is

properly 'recharacterized' as a complaint arising under federal law.'" *Id.* (quoting *Rice v. Panchal*, 65 F.3d 637, 640 n.2 (7th Cir. 1995)).   Complete preemption not only "confer[s] federal jurisdiction, it also limits claims and remedies exclusively to those provided by" the federal statute. *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 302 (8th Cir. 1993)).   Per this exception, the District Court should not accept Plaintiffs' characterization of their claims, but rather it should examine the "essence" of the claims to determine if they rest on a cause of action provided by federal law.   *See Hull*, 188 F.3d at 942 (finding that ERISA preempted the plaintiff's state law claims because "although [his] characterization of his claims sound in medical malpractice, the essence of his claims rests on the denial of benefits").   When determining if Plaintiffs' claims are preempted, the District Court should determine whether a finding of non-preemption "'would pose an obstacle to the purposes and objectives of Congress.'"   *Id.* (quoting *Pilot Life*, 481 U.S. at 52).

The PAA is a federal statute that provides for complete preemption whenever plaintiffs plead that a "nuclear incident" has occurred.   Indeed, this Court previously recognized as much, noting that:

> other appellate courts have exhaustively examined this issue following the 1988 amendments to the PAA, and they have found federal preemption of state-law claims for nuclear incidents.   *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing a nuclear incident claim); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts state law claims and they "cannot stand as separate causes of action"); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994) (a federal cause of action for a nuclear safety claim "supplants" the prior state cause of action); *In re TMI Litig. Cases Consol. II (TMI II)*, 940 F.2d 832, 854 (3d Cir. 1991) (a nuclear incident claim is "compensable under the [PAA] or it is not compensable at all.").

*Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1097 (E.D. Mo. 2017).  By this ruling, this Court joined the "many appellate courts" holding that the PAA "preempts state-law claims when a nuclear incident is alleged."  *Id.* at 1098.

## III.   PLAINTIFFS' READING OF THE PAA IS INCORRECT

### a.   The Plain Text of the PAA, Coupled With the Intent of the 1988 Amendments, Shows That Plaintiffs' Claims Are Preempted

By focusing on the PAA, as enacted in 1954 and amended in 1957, (*see* Dkt. 174-1 at 5, 10), and zeroing in on the term "extraordinary nuclear occurrence," Plaintiffs ignore that Congress's 1988 amendments to the PAA "deliberately increased the scope of the Act's coverage." *Estate of Ware v. Hosp. of Univ. of Pa.*, 871 F.3d 273, 279 (3d Cir. 2017) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)), *cert. denied*, 138 S. Ct. 2018 (2018).  Prior to these amendments, federal jurisdiction under the PAA was automatically conferred *only* when claims arose out of an "extraordinary nuclear occurrence."  *Acuna*, 200 F.3d at 339.  Due to the substantiality requirements of this phrase, only a limited number of cases qualified for PAA jurisdiction prior to the 1988 amendments.  *See* 42 U.S.C. § 2014(j) (requiring a finding that a discharge or dispersal of nuclear material "has resulted or will probably result in **substantial** damages" (emphasis added)).  Following the nuclear accident at Three Mile Island, however, the shortcomings of the PAA's narrow applicability were exposed, as claims could not be consolidated in federal court. *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999).  As a result, Congress amended the PAA to broaden federal jurisdiction.  *Id.*  In doing so, Congress took "another step toward federalizing the law applicable to nuclear accidents."  *Ware*, 871 F.3d at 279. Congress also made those changes retroactive.  Pub. L. No. 100-408 § 20(b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act.").

In relevant part, the PAA's current scope is not limited to solely "extraordinary nuclear occurrences," but rather, provides that:

> With respect to any **public liability action** arising out of or resulting from a **nuclear incident**,[1] the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant . . . any such action pending in any State court . . . shall be removed . . . to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2) (emphasis added).  "Public liability action," in turn, is defined as "any suit asserting public liability."  42 U.S.C. § 2014(hh).  "Public liability" means "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ."  *Id.* § 2014(w). And "nuclear incident" is defined as:

> any **occurrence**, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . .

*Id.* at § 2014(q) (emphasis added).

Although the term "occurrence" is not separately defined, when a separate definition is lacking, courts give terms their "ordinary meaning" as found in dictionaries.  *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016) (using *Black's Law Dictionary* (10th ed. 2014) to supply meaning to the term "contract").  "Occurrence" simply means "[s]omething that happens or takes place."  *Black's Law Dictionary* 1109 (8th ed. 2004); *see also Ware*, 871 F.3d at 281 (applying *Webster's Third New International Dictionary* (1993) definition of "occurrence," which includes "'something that takes place'" or "'the action or process of

---

[1] Prior to the 1988 amendments, the phrase "extraordinary nuclear occurrence" appeared in this definition.  With those amendments, however, Congress broadened the PAA's reach by "striking 'an extraordinary nuclear occurrence' each place it appear[ed] and inserting 'a nuclear incident.'" Pub. L. 100-408 at § 11(a)(1)(A)-(B).

happening or taking place'" (quoting *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 805 (N.D. Ill. 1999))).

Given the meaning of these definitions, and Congress's intent to broaden the scope of the PAA with the 1988 amendments, it is clear that the PAA preempts Plaintiffs' claims, as all of the jurisdictional prerequisites are met.  First, because Plaintiffs seek to hold Cotter accountable for "legal liability" arising out of a nuclear incident, this matter involves a "public liability action." 42 U.S.C. § 2014(w), (hh).  Second, this matter arose out of a "nuclear incident" because something happened – *i.e.*, an "occurrence" – that allegedly caused "damage to property . . . arising out of . . . radioactive . . . properties of source, special nuclear, or byproduct material."  *Id.* at § 2014(q); *see also* Dkt. 166 at ¶ 7 (noting that Plaintiffs' residence "is contaminated with the radioactive material from the Landfill.").  The plain text of the PAA demands nothing more in order for jurisdiction to be conferred, and this should be the end of the inquiry.  *See Ware*, 871 F.3d at 279 (citation omitted) (stating that the PAA now provides "federal jurisdiction over any actions 'asserting public liability,' arising from a 'nuclear incident,' which generally includes any 'occurrence' causing physical harm resulting from radioactive properties of nuclear material").  Indeed, even *Cook v. Rockwell* – a case which Plaintiffs claim greatly aids their cause – acknowledges the simplicity of the PAA's jurisdictional provision: "[A] public liability action is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, **or property damage**.'"  790 F.3d 1088, 1094-95 (10th Cir. 2015) (quoting *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011)) (emphasis added).  Rather than facing this plain language, however, Plaintiffs

engage in a convoluted effort of statutory interpretation that improperly attempts to nullify the 1988 amendments.[2]

### i. Plaintiffs Wrongly Read the 1988 Amendments Out of the PAA

By claiming that the narrow phrase "extraordinary nuclear occurrence" places limits on the broader term "occurrence," *see* Dkt. 174-1 at 8-10, Plaintiffs ignore the 1988 amendments, which were undisputedly enacted to broaden the scope of PAA preemption. *El Paso*, 526 U.S. at 477; *Ware*, 871 F.3d at 279; *Acuna*, 200 F.3d at 339. As discussed above, prior to these amendments, jurisdiction was conferred on federal courts only when there was an "extraordinary nuclear occurrence." *Acuna*, 200 F.3d at 339. But if Plaintiffs are correct that "occurrence" and "extraordinary nuclear occurrence" should be given similar meanings, thus limiting preemption to only certain narrow circumstances, the 1988 amendments would be meaningless. This cannot possibly be the correct reading of the PAA, because it would violate two canons of statutory construction.[3]

First, using the term "extraordinary nuclear occurrence" to define and limit "occurrence" would violate the canon that courts should "'give effect to every clause and word' of the Act." *Sester v. United States*, 566 U.S. 231, 239 (2012) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)); *United States v. Johnson*, 703 F.3d 464, 468 (8th Cir. 2013) (citation omitted)

---

[2] The Court should not be misled by Plaintiffs' attempt at a "parade of horribles" argument. Contrary to their assertion, Cotter is not arguing that the PAA should apply to "every case involving nuclear materials or radiation." (Dkt. 174-1 at 12-13.) Rather, the PAA squarely applies *to this case* because it involves source material from the Manhattan Project. (*See, e.g.*, Dkt. 166 at 1, 7, 39-41, 44-45, 86.)

[3] Plaintiffs' reading of the PAA also ignores the usage of the word "including" in the definition of "nuclear incident." As discussed above, "nuclear incidents" are defined to encompass "any occurrence, **including** an extraordinary nuclear occurrence." 42 U.S.C. § 2014(q) (emphasis added). Given Congress's usage of the word "including," this clearly shows that "occurrences" are a large set of happenings, which consist of, but are not limited to, the smaller subset of "extraordinary nuclear occurrences."

(noting that this is a "'cardinal principle of statutory construction'").   Second, by narrowly interpreting "occurrence" in the face of Congress's intent to broaden PAA jurisdiction, Plaintiffs' construction would violate the canon that a definition "must not be given a restrictive meaning which frustrate[s] the congressional intent." *First Nat'l Bank in Plant City, Fla. v. Dickinson*, 396 U.S. 122, 134 (1969); *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132, 1134 (9th Cir. 1998) (citation omitted) ("[W]e must reject constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement.").   For these reasons, this Court should reject Plaintiffs' attempt to read the term "occurrence" out of the PAA and should instead effectuate Congress's intent of broadening the PAA's jurisdictional reach.

ii.   **Numerous Courts Have Criticized the Same Analysis Advanced by Plaintiffs Here, and Rejected the Case on Which They Rely**

In an effort to limit "occurrence" to the more narrowly defined "extraordinary nuclear occurrence," Plaintiffs employ the flawed analysis from *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998).   Plaintiffs not only heavily cite to it, but they also fail to inform the Court that the Third Circuit recently rejected *Gilberg*, thereby removing any persuasive authority it may have had.   *See Ware*, 871 F.3d at 283 (agreeing with the Fifth Circuit that *Gilberg* "misses" the purpose of the 1988 amendments and relies "'on faulty statutory interpretation and [is] contrary to Congressional intent'" (quoting *Acuna*, 200 F.3d at 339)).

In addition to joining the Fifth Circuit's rejection of *Gilberg*, the Third Circuit is now in accord with district courts from the Eleventh and Seventh Circuits that have noted flaws in *Gilberg*'s reasoning.   *See, e.g.*, *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1258 (S.D. Fla. 2014) ("A plain reading of the [PAA] contradicts the *Gilberg* court's flawed reasoning . . . ."); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999) (noting that there "are, in fact, numerous problems with the path *Gilberg* takes," faulting its "use of a narrowing

term to restrict what was obviously intended to be a broader term," and finding its "restrictive reading of the plain wording of the statute is at odds with Congress' intent").  This Court should follow the Third Circuit's more recent decision rejecting the reasoning of Plaintiffs and *Gilberg* and find, in keeping with the PAA's plain language and Congress's intent, that the PAA is "broad enough to create a federal forum for any tort claims even remotely involving atomic energy production."  *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997).  For these reasons, this Court should reject Plaintiffs' analysis and find that this Court has jurisdiction under the PAA.

### b.  A License or Indemnity Agreement Is Not a Prerequisite for Jurisdiction

Plaintiffs' argument that a license or indemnity agreement is required in order for there to have been a "nuclear incident" relies on a tortured (and incorrect) reading of the statute.  This Court should not be misled by Plaintiffs' contention, because acceptance of their analysis would nullify the purpose of the 1988 amendments.  Moreover, the analysis Plaintiffs adopt has been repeatedly criticized and rejected by numerous courts.

### i.  A License Is Not a Jurisdictional Prerequisite

Contrary to Plaintiffs' contention, the PAA does not require a license as a jurisdictional prerequisite.  Rather, "[i]n passing the [PAA], Congress recognized that a nuclear incident might be caused by any number of participants in the nuclear industry beyond the actual licensee." *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1378 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994).  Indeed, numerous courts have expressly rejected the contention that "the PAA is limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities."  *Estate of Ware v. Hosp. of Univ. of Pa.*, 73 F. Supp. 3d 519, 530 (E.D. Pa. 2014) (citation and internal quotation marks omitted) (involving a nuclear incident occurring at a university research facility), *aff'd*, 871 F.3d 273 (3d Cir. 2017); *see also Cotromano*, 7 F. Supp.

- 8 -

3d at 1258 ("Thus, demonstration of a license for radioactive materials is not a prerequisite to federal jurisdiction under the plain language of the [PAA]."); *Carey*, 60 F. Supp. 2d at 804 (rejecting argument to limit application of PAA to only the facility licensed by the NRC).

That these courts have rejected Plaintiffs' license contention is not surprising, because none of the statutory definitions limit the jurisdiction over nuclear claims to licensed activity.  42 U.S.C. § 2014(w) ("public liability"), § 2014(hh) ("public liability action").  Critically, in other provisions of the PAA, Congress expressly used terms such as "licensed activity," "licensed facility," and "facility subject to licensing."  *See, e.g.*, 42 U.S.C. § 2201(m) ("agreements regarding production"); 42 U.S.C. § 2284(a) ("sabotage of nuclear facilities or fuel").  As the Supreme Court has ruled, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *United States v. Gonzales*, 520 U.S. 1, 5 (1997).  Applying this canon of construction to the PAA, this means that Congress acted "intentionally and purposefully" by excluding any licensing requirement from the PAA's jurisdictional provisions. *Cotromano*, 7 F. Supp. 3d at 1257-58 (adopting this analysis regarding the PAA).

Equally unavailing is Plaintiffs' argument that Congress's definition of "nuclear incident" supports their contention that a license is needed for a nuclear incident to occur.  Their reading is incorrect because it ignores the definition's distinction between occurrences happening "within the United States" and "outside the United States." *See* 42 U.S.C. § 2014(q).  The general definition of "nuclear incident," which applies to occurrences happening "within the United States," does not condition jurisdiction on possession of a license. *Id.*  It is *other* parts of the definition, which apply to occurrences happening "outside the United States," that reference licensed materials and

- 9 -

persons.  *Id.*  These latter definitions, however, are not applicable to this case because there is no dispute that the nuclear incident took place within the United States, in Missouri.

Plaintiffs' reliance on three cases from this District which have held that a license is a jurisdictional prerequisite is also misplaced.  The first of these cases to be decided, *Strong v. Republic Services, Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017) (Hamilton, J.), was wrongly decided because *Strong*'s holding that a license is a prerequisite is based almost exclusively on *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998), which, as discussed above, has been routinely criticized and was recently rejected by the Third Circuit, thereby removing any persuasive authority it may have had.  *Ware*, 871 F.3d at 283.  Since *Strong* was decided, furthermore, at least one court has declined to follow that case's ruling.  In *Pinares v. United Technologies Corp.*, the plaintiffs relied solely on *Strong* for the proposition that the PAA requires a license or indemnity agreement.  *See* No. 9:10-cv-80883, Dkt. 345 at 24 (S.D. Fla. June 6, 2018).  Finding that the PAA preempted plaintiffs' claims, the U.S. District Court for the Southern District of Florida rejected plaintiffs' contention that the PAA requires a license or indemnity agreement, relying on the same cases Cotter relies on herein.  *Pinares v. United Techs. Corp.*, No. 9:10-cv-80883, 2018 U.S. Dist. LEXIS 195073, at *14 n.5 (S.D. Fla. Nov. 14, 2018).  Moreover, Cotter – the license-holder – was not a party to *Strong* in 2017 and, as a result, did not have an opportunity to brief the jurisdictional issues before Judge Hamilton, as it does here.

Plaintiffs' reliance on the opinion issued in *Banks v. Cotter Corp.*, No. 4:18-cv-00624, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019) is similarly misplaced, because *Banks* heavily relied on *Strong* and *Gilberg*.  Additionally, as with the original *Strong* decision, Cotter – the license-holder – was not a party to *Kitchin* or the briefing in that case, *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600 (E.D. Mo. 2019)*,* and did not have a chance to raise the arguments contained

herein.  To the extent the opinions in *Banks* and *Kitchin* relied on *Strong*, which in turn relied on the now-defunct reasoning of *Gilberg*, they were wrongly decided.  This Court should not join their incorrect reasoning but, rather, should find that a license is not a PAA jurisdictional prerequisite.

### ii.   Assuming, *Arguendo*, That a License Is a Jurisdictional Prerequisite, Cotter's Source Material License Confers This Court With Jurisdiction

Although the PAA does not condition jurisdiction on the possession of a license, Plaintiffs' fixation on this point is simply a red herring, as they admit that Cotter possessed a source material license.  *See* Dkt. 174-1 at 10.  Pointing to *Strong*, Plaintiffs attempt to sidestep this admission by claiming that Cotter's license did not cover "uranium mill tailings," which they claim are the wastes that are allegedly at issue in this case.[4]  *Id.* (citing Dkt. 166 at ¶ 3, 91).  The Court should reject Plaintiffs' attempt to plead around the PAA because their contention that this material was uranium mill tailings (and thus, not source material) is belied by the actual Source Material License that the Atomic Energy Commission ("AEC") issued to Cotter for the materials located at the Latty Avenue property.  *See* Dkt. 64-5.  By way of background, on February 14, 1966, the AEC issued License No. SMA-862 for Continental Mining & Milling Co. to possess and take other actions with "source material."  Dkt. 64-2.  The source material is described in the license as "uranium and thorium" of up to "125,000 tons of residues . . . ."  *Id.*.  The AEC also issued licenses for these source materials in 1963, 1966, and 1969.  *See* Dkt. 64-3, 64-4, 64-5.  The license issued to Cotter expressly stated that the material at Latty Avenue – which included the material that Plaintiffs

---

[4] *Strong* did not conclude that Cotter's 1969 license could not support jurisdiction under the PAA. Rather, Judge Hamilton merely found that Cotter's license did not extend to uranium mill tailings, while simultaneously declining to determine, based on the record before it, whether the radioactive materials allegedly in the landfill *were*, in fact, uranium mill tailings.  *Strong*, 283 F. Supp. 3d at 772-73.  As set forth herein, this Court can conclude that the material is source material, not uranium mill tailings.

allege was disposed of at West Lake Landfill – was source material.  *Id.*[5]  The term 'source material,' moreover, means (1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of [Title 42] to be source material."  42 U.S.C. § 2014(z).  Likewise, the implementing regulation broadly defines source material as "Uranium or thorium, or any combination thereof, in any physical or chemical form."  10 C.F.R. § 40.4; *see also* Dkt. 175 at 5-7 (discussing how the allegations in the SAC describe harm from source material, including uranium and its decay products).  Indeed, the fact that the material was "source material" is underscored by Plaintiffs' First Amended Complaint ("FAC").  There, Plaintiffs explicitly alleged that "Cotter transferred **source material** from Latty Avenue to the West Lake Landfill."  Dkt. 70 at ¶ 62 (emphasis added).  Just because Plaintiffs have removed the phrase "source material" from their SAC does not change what that material is.

Equally meritless are Plaintiffs' contentions that Cotter's license authorized it only "to receive, possess and import source material" and that Cotter was not authorized to dispose of "the material at an unauthorized site."  *See* Dkt. 174-1 at 11; *see also* Dkt. 166 at ¶ 59 ("Cotter failed to obtain a license from any governmental authority to transport radioactive mill tailings wastes to the West Lake Landfill.").  Plaintiffs are incorrect because Cotter did not need a license to dispose of the material in the landfill.  42 U.S.C. § 2092.  Tellingly, Plaintiffs' SAC has removed reference to § 2092, which is the PAA provision governing transport of source material.  *Compare* Dkt. 166 at ¶ 59, *with* Dkt. 70 ¶ 62.  Plaintiffs' omission is no doubt intentional, as that provision provides:

> Unless authorized by a general or specific license issued by the Commission which the Commission is authorized to issue, no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its

---

[5] Cotter's Source Material License No. SUB-1022 was terminated on November 13, 2014.  Dkt. 64-6.

place of deposit in nature, *except that licenses shall not be required for quantities of source material which, in the opinion of the Commission, are **unimportant***.

42 U.S.C. § 2092 (emphasis added).  For the following reasons, the quantity of source material that Cotter disposed of met the definition of "unimportant quantities."

The NRC has determined that whenever a person transfers "source material in any chemical mixture, compound, solution, or alloy in which the source material is by weight less than one-twentieth of 1 percent (0.05 percent) of the mixture, compound, solution or alloy," that "person is exempt from . . . the requirements for a license."  10 C.F.R. § 40.13(a) ("Unimportant quantities of source material").  This regulation has been in place since the 1960s.  *See* 26 Fed. Reg. 284 (Jan. 14, 1961).  Given this definition, the administrative record for the West Lake Landfill Superfund Site shows that the material Cotter disposed of was an "unimportant quantity," and thus, not subject to licensing requirements.  The 8700 tons of leached barium sulfate residue ("LBSR") that Cotter disposed of contained 0.05-0.1 percent source material (uranium) *prior to* being combined with 39,000 tons of soil.  (Remedial Investigation Addendum, West Lake Landfill, Operable Unit 1, at 159-61, *available at* https://semspub.epa.gov/work/07/30352110.pdf.)  Thus, when the soil was added to the LBSR, it created a mixture that reduced the percentage of source material to between 0.01%-0.02%.  This amount is well below NRC's "unimportant quantity" threshold of "less than one-twentieth of 1 percent (0.05 percent) of the mixture."  *See* 10 C.F.R. § 40.13(a).  For this reason, Cotter was not required to obtain a license to transport the LBSR to the landfill.

Regardless, this Court has already ruled *in this case* that the PAA applies even though Cotter allegedly did not have a license that allowed it to transport source material to the Landfill.  This Court previously ruled that the PAA claim in Plaintiffs' FAC preempted their state-law claims.  *Dailey*, 299 F. Supp. 3d at 1097-99.  Importantly, the FAC alleged that "Cotter failed to

- 13 -

obtain a license from the Atomic Energy Commission (AEC) or its successor the Nuclear Regulatory Commission (NRC) to transport radioactive wastes to the West Lake Landfill."  Dkt. 70 at ¶ 60; *see also id.* at ¶ 62 ("Cotter transferred source material from Latty Avenue to the West Lake Landfill without a license in violation of 42 U.S.C. § 2092.").

This allegation is almost word-for-word the same as the SAC's allegation that "Cotter failed to obtain a license from any governmental authority to transport radioactive mill tailings wastes to the West Lake Landfill."  Dkt. 166 at ¶ 59.  Additionally, Plaintiffs raised this point in their brief opposing Defendants' motion to dismiss the FAC.  Dkt. 77 at 9 ("Likewise, as Plaintiffs note in their Complaint, Defendants violated 42 USC § 2092 by the unlicensed transfer of source material to the Landfill." (citing Dkt. 70 at ¶ 62)).  Plaintiffs overlook this previous ruling, which should apply to the instant motion.

For these reasons, this Court should join the numerous courts that have found that a license is not a PAA jurisdictional prerequisite.  Even if this Court finds that a license is a prerequisite, it still has jurisdiction because Cotter was exempt from any licensing requirement by virtue of the "unimportant quantities" exemption.

### iii.   An Indemnity Agreement Is Not a Jurisdictional Prerequisite

Contrary to Plaintiffs' assertion that a nuclear incident can occur only if a defendant had an indemnification agreement with the government – which also comes from the now-rejected *Gilberg* – such an agreement is not a jurisdictional prerequisite.  Indeed, as with the license issue, most courts that have addressed this issue have flatly rejected Plaintiffs' argument.  *Ware*, 871 F.3d at 282-83 (rejecting *Gilberg*'s contention that the PAA "only covers defendants that have indemnity agreements with the NRC"); *Acuna*, 200 F.3d at 339 ("There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on . . . whether the facility is covered under the separate indemnification portions of the Act."); *Cotromano*, 7 F. Supp. 3d at 1259

("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson to this case."); *Carey*, 60 F. Supp. 2d at 806 ("The inclusion of the phrase ['to which an indemnity agreement applies'] clearly indicates Congress' belief that there can be an [extraordinary nuclear occurrence] to which no indemnity agreement applies.").

Plaintiffs' contention must also be rejected because the same canon of construction that undercuts their license argument also undercuts this indemnification assertion.  Specifically, none of the statutory definitions limit the jurisdiction over nuclear claims to defendants that had an indemnification agreement.  42 U.S.C. § 2014(w) ("public liability"), § 2014(hh) ("public liability action"), § 2014(q) ("nuclear incident").  In *other* provisions of the PAA, Congress expressly used terms such as "indemnification," "indemnities," "indemnitor," and "persons indemnified."  *See, e.g.*, 42 U.S.C. § 2210(a)-(c).  Because Congress included indemnification language in certain portions of the statute, but excluded it from the jurisdictional definitions, this evinces Congress's intent to exclude indemnification as a jurisdictional prerequisite.  *See Gonzales*, 520 U.S. at 5.

 Plaintiffs' argument also ignores the PAA's definition of "persons indemnified,"[6] which is "the person with whom an indemnity agreement is executed or who is required to maintain financial protection, *and any other person who may be liable for public liability*."  42 U.S.C. § 2014(t)(1) (emphasis added).  Were the Court to accept Plaintiffs' contention that PAA jurisdiction is conferred on only those with an indemnification agreement, the entire clause "and any other person who may be liable for public liability" would be meaningless.  Stated differently, even if indemnification were a jurisdictional prerequisite under the PAA – which, as discussed above, it

---

[6] As discussed in the preceding paragraph, Congress used the term "persons indemnified" in a number of places of the PAA, but it does not appear in the provision vesting U.S. district courts with jurisdiction.  42 U.S.C. § 2210(n)(2).

is not – the definition of "persons indemnified" is sufficiently broad that Defendants here would still fall within that definition.

Nor should this Court be persuaded by *Strong*'s finding that an indemnity agreement is a jurisdictional prerequisite.  In addition to relying on the now-rejected *Gilberg*, *Strong* erred in its consideration of the PAA's legislative history.  After examining the legislative history of the *1957 amendments*, including the 1957 Senate Report, the court mistakenly concluded that "the terms 'nuclear incident' and 'occurrence' are inextricably intertwined with 'licenses' and 'indemnification agreements,' thus suggesting . . . there cannot be a nuclear incident without an applicable license or indemnity agreement."  *Strong*, 283 F. Supp. 3d at 770-71.  This was an error because the term "nuclear incident" was not added to the PAA's jurisdictional provision *until 1988*. Therefore, any statements from the 1957 Senate Report using the words "nuclear incident" thirty-one years earlier does not shed light on its meaning.  Second, had the court read one paragraph further in the Senate Report, it would have seen that even in 1957, Congress intended the PAA's jurisdiction to extend to entities other than those who possessed an indemnity agreement:

> The definition "person indemnified" means ***more than just the person with whom the indemnity agreement is executed***. . . . [and] ***also covers any other persons who may be liable***. . . . [I]t is ***not meant*** to be limited solely to those who may be found liable due to their contractual relationship with the licensee.  In the hearings, the question of protecting the public was raised where some unusual incident, such as negligence in maintaining an airplane motor, should cause an airplane to crash into a reactor and thereby cause damage to the public.  Under this bill the public is protected and the airplane company can also take advantage of the indemnification and other proceedings.  The proposed AEC limitation to those in privity with the licensee was reconsidered by the Commission, and the Commission decided to accept the premise of the original bills which would make the person indemnified ***any person who might be found liable, regardless of the contractual relation***.

S. REP. NO. 85-296 (May 9, 1957), *reprinted in* 1957 U.S.C.C.A.N. 1803, 1818 (1957) (emphasis added).  This legislative history confirms the plain text of the statute and the cases that have found no indemnity agreement is required.

Plaintiffs also fail to take into account that the PAA expressly states that the AEC/NRC **may** require indemnity agreements, but does not mandate that all source material license holders hold such agreements.  Specifically:

> Each license issued under section 2133 or 2134 of this title and each construction permit issued under section 2235 of this title **shall**, and each license issued under section 2073, **2093**, or 2111 of this title **may**, . . . have as a condition of the license a requirement that the licensee have and maintain financial protection of such type and in such amounts as the Nuclear Regulatory Commission . . . shall require in accordance with subsection (b) of this section to cover public liability claims. Whenever such financial protection is required, **it may be a further condition of the license that the licensee execute and maintain an indemnification agreement** in accordance with subsection (c) of this section.

42 U.S.C. § 2210(a) (emphasis added).  Section 2093 (referenced in the block quote) pertains to source material licenses.  Thus, indemnification agreements **may** be a condition for a licensee but are **not required** in every instance that the AEC/NRC issues a source material license.[7]

## IV.   PAA PREEMPTION OF PLAINTIFFS' STATE LAW CLAIMS WOULD NOT VIOLATE DUE PROCESS

Plaintiffs do not, and cannot, meet their burden of establishing that PAA preemption of their state law claims would violate the Due Process Clause of the Fifth Amendment.  The

---

[7] Rather than acknowledge this provision, Plaintiffs instead mistakenly rely on a 1998 report by NRC to Congress. Dkt. 174-1 at 5-6.  This report was submitted for the purpose of reauthorizing NRC indemnity provisions, not to reauthorize the PAA as a whole.  If anything, this report shows that the PAA applies to entities without indemnification agreements, noting that from "1957 to December 1997, claims for 195 alleged incidents involving nuclear material under various liability policies were filed.  Most, **but not all**, of the reported claims experience is related to indemnified nuclear facilities."  NRC, *The Price-Anderson Act – Crossing the Bridge to the Next Century: A Report to Congress* at xix (Aug. 1, 1998), *available at* https://www.nrc.gov/docs/ML1217/ML12170A857.pdf (emphasis added).  As this report shows, facilities lacking indemnification agreements were still able to file claims.

"liability-limitation provision" of the PAA has been described as "a classic example of an economic regulation." *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 83 (1978) (citing *Usery v. Turner Elkhorn Mining Co.*, 438 U.S. 1, 15 (1976)). Thus, the PAA "'come[s] to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.'" *Id.* (quoting *Usery*, 428 U.S. at 15). Rather than attempting to meet this high burden, Plaintiffs instead resort to mischaracterizing the U.S. Supreme Court's *Duke Power* holding.

Although Plaintiffs contend otherwise, the Court found that the Due Process Clause does not necessarily require that a Congressional act "either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power*, 438 U.S. at 88 ("Initially, it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy."). The Court further explained that its "'cases have clearly established that a person has no property, no vested interest, in any rules of the common law.'" *Id.* at 88 n.32 (citation omitted). The Court also observed that, if the Constitution did require duplication of recovery or a "reasonable substitute remedy," the PAA provided such a substitute. *Id.* at 88 (citations omitted). In other words, even if Plaintiffs were correct that the PAA cannot take away any rights without providing a "reasonable substitute remedy," their argument still fails, because the PAA does provide such a substitute. Moreover, subsequent cases confirm that the PAA does not *take away* any rights. Rather, it "transforms" actions based on state law claims that seek to impose public liability into federal actions – regardless of how those claims are titled by plaintiffs. *See Neztsosie*, 526 U.S. at 484. For these reasons, Plaintiffs have not come close to meeting their high burden regarding their argument that PAA preemption of their state law claims would violate their due process rights.

- 18 -

## V.    <u>CONCLUSION</u>

Because Plaintiffs seek to hold Cotter liable for damages arising out of a nuclear incident, their motion to remand must be denied, as this Court has jurisdiction.  Nothing in the text of the statute or its legislative history shows that possession of a license or indemnity agreement is a jurisdictional prerequisite.  The few cases that have found otherwise are either no longer good law or rely on faulty statutory construction.  Finally, preemption of Plaintiffs' state law claims would not violate due process.  For these reasons, Plaintiffs' motion must be denied.

Dated: November 26, 2019                    Respectfully submitted,

                                            /s/ John McGahren
                                            MORGAN LEWIS & BOCKIUS, LLP
                                            John McGahren, Esq. (ID 046791990N)
                                            john.mcgahren@morganlewis.com
                                            Stephanie Feingold, Esq. (ID 23182005N)
                                            stephanie.feingold@morganlewis.com
                                            502 Carnegie Center
                                            Princeton, NJ 08540
                                            (609) 919-6600 (telephone)
                                            (609) 919-6701 (facsimile)

                                            BRYAN CAVE LEIGHTON PAISNER LLP
                                            Dale A. Guariglia, Mo. Bar 32988
                                            daguariglia@bclplaw.com
                                            Erin L. Brooks, Mo. Bar 62764
                                            erin.brooks@bclplaw.com
                                            One Metropolitan Square
                                            211 N. Broadway, Suite 3600
                                            St. Louis, Missouri 63102
                                            (314) 259-2000 (telephone)
                                            (314) 259-2020 (facsimile)

                                            ATTORNEYS FOR DEFENDANT
                                            COTTER CORPORATION (N.S.L.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ John McGahren_____